We concur with Mr. Eaton in the position that from the manner in which the case was put to the jury, the motion for a venire de novo is to be considered on the testimony of the witnesses for the prisoner only; and that the testimony of his principal witness, Harriet, is to be taken in the view most favorable to him. This follows from the fact that the judge made a general charge, and did not "declare and explain the law arising on the evidence." S. v. Summey, post, 496; Gaither v. Ferebee, ante, 303; S. v.Norton, ante, 296.
We have these facts: The prisoner and one Micajah, on a starlight night and in the shade of trees, had a fight. Micajah got the prisoner down, and then ran off. The prisoner rose up, and had his hand to his side as if he was holding something in his hand; he then (458) sat down on the doorsill on which the deceased was sitting. Words passed between them; the prisoner got up; the deceased then rose up and reached his hand inside the door and got a stick. As he was turning round (after getting the stick), the prisoner stabbed him in the left side with a bowie-knife, the blade of which was 9 inches long. The deceased then knocked him down with the stick; as he rose, he knocked him down *Page 292 
a second and a third time; prisoner ran off, the deceased followed him a few steps, and fell, and died of the wound. The bowie-knife and stick were admitted to be deadly weapons.
The learned counsel insisted that the offense was manslaughter, on two grounds: (1) The act of seizing the stick, with an intent instantly to strike, was an assault with a deadly weapon, and amounted to legal provocation. (2) The prisoner had reasonable ground to believe that the deceased was about to do him great bodily harm, and struck to prevent it, which mitigates the offense to manslaughter.
Conceding these principles of law, the Court is of opinion that neither applies to this case, and that the offense is murder. There is someconfusion in respect to the application of these principles of the law of homicide, growing out of obiter dicta and certain decisions to be met with in the books. It is important that all confusion should be cleared away, especially in times like these; for one of the ill effects of war is to scatter deadly weapons among the people, familiarize the public mind to scenes of blood, and make a resort to such weapons a thing of frequent occurrence, unless it is prevented by the fear of the law. On this account, without attempting to review the cases (which would be an endless task), I will endeavor to give the reasons on which the law is based, whereby the proper applications of its principles will be made clear.
Manslaughter is of two kinds: (1) When the killing is in the heat of blood. (2) When the killing is by accident or mistake, arising from negligence or a want of due precaution.
(459) 1. If A. is about to strike B., who is unwilling to enter into a fight, and shows it by words or actions, or otherwise, as by going back, or warns A. not to strike, and A. presses on and strikes, or attempts to strike, and thereupon B. kills with a deadly weapon, it is manslaughter; for there is legal provocation, and the law ascribes the killing to "heat of blood," and not to malice.
2. If, on a sudden quarrel, the parties begin a fight by consent,without deadly weapons, and, after blows pass, one uses a deadly weapon and kills, it is manslaughter; for by the excitement of the fight the blood is heated, and the killing is done not of malice, but in the "furor brevis,"
which the law, out of indulgence to human frailty, allows to mitigate the offense, although the party had himself committed a breach of the peace by entering into the fight willingly.
3. If on a sudden quarrel the parties fight by consent, at the instant,with deadly weapons, and one is killed, it is but manslaughter, providedthe parties fight on equal terms and no undue advantage is taken; for thefairness of the fight rebuts the implication of malice, and the law mitigates the offense, out of indulgence to the frailty of human nature. *Page 293 
Which of these three principles is applicable to our case? When it is proved that one has killed intentionally, with a deadly weapon, the burthen of showing justification, excuse, or mitigation is on him. It is admitted the prisoner killed intentionally, with a deadly weapon. He does not show, by his words or actions, that he declined to fight, or give back, or warned the deceased not to strike. So the first principle does not apply. The parties did not begin the fight without deadly weapons. So the second principle does not aply [apply]. The parties fought, by consent, with deadly weapons; so the case falls under the third principle, and the question is narrowed to this, Does the principle in regard (460) to a fair fight apply? or does the case fall under the exception in regard to a fight on unequal terms and when undue advantage is taken? This is too plain for discussion. The prisoner, having his weapon ready, took his adversary at a disadvantage, and stabbed him in the side while he was in the act of turning round to face him, and before he was "on his defense." This dastardly act excludes the idea that he entered into the fight in compliance with the common notions of honor, and shows that he "sought the blood" of the deceased.
The principle by which a killing in a fair fight, with deadly weapons, is mitigated, was adopted at a time when every gentleman wore a sword; and the custom was, on offense given, to draw and fight. Such fights, owing to the expertness of the combatants in defense, were not often fatal. Manners have since changed. No one in private life now wears a sword; and how far this may affect the principle is a serious question; but it is certain that a fair fight at the instant with deadly weapons is now a rare occurrence. When one has a knife, and the other a stick or a pistol they are not on equal terms; and the purpose of each is to take advantage and give a mortal blow as soon as possible. Such cases fall under the exception; the party killing is a murderer, and there is nothing to mitigate.
If, as contended by Mr. Eaton, in a "mutual combat" with deadly weapons the offer to strike amounts to a legal provocation, neither party would ever be guilty of more than manslaughter; for each could say, "My adversary was about to strike with a deadly weapon" So it would make no difference whether the fight was declined or entered into willingly, or was fair or unfair — and the law would encourage a hasty resort to deadly weapons, and an unfair use of them, by saying, "You need not show that you declined to fight, and attempted to avoid it; you need not show that you took no undue advantage. Use your weapon as soon as you can, and take all advantages! for if your adversary is (461) about to strike, it is a legal provocation, although you are also about to strike, and whichever kills will only be guilty of manslaughter." This would only lead to horrid consequences, and completely upset and *Page 294 
confound all the principles which have been so carefully adopted to deter men from the use of deadly weapons and at the same time extend a reasonable indulgence to the frailty of human nature.
The learned counsel did not insist with much earnestness that the case could be brought under the second kind of manslaughter. One or two instances will show that the doctrine has no application, viz.:
1. If one handles a loaded gun so negligently that it goes off and kills, it will be excusable homicide or manslaughter, according to the degree of negligence.
2. An officer pushed abruptly and violently into a gentleman's chamber early in the morning to arrest him, not telling his business or using words of arrest. The gentleman, not knowing that he was an officer, under the first impulse, stabbed him with his sword. It was ruled manslaughter at common law, for the prisoner, not knowing the officer's business, might, from his behavior, reasonably conclude that he was about to rob or murder him. Cook's case, Cro. Car., 538.
3. Upon an outcry of thieves, in the night-time, a person who was concealed in a closet, but no thief, in the hurry and surprise the family was under, was stabbed in the dark. This was holden to be an innocent mistake, and ruled chance-medley. Lever's case, cited in Cook's case,supra. Foster, at page 299, observes of this case: "Possibly it might have been better ruled manslaughter, due circumspection not having been used. In all cases when the offense is mitigated because the party acted under a mistake, for which there was reasonable ground, if the danger had been real, the act would have been justifiable." In our case the (462) danger was real — the deceased was about to strike with a deadly weapon; and if this doctrine applies, the killing was justifiable, and the prisoner ought to have been acquitted. Reductio adabsurdum.
The second objection to the charge is not tenable. From the view we have felt bound to take of the case, the judge is considered as having, in effect, instructed the jury that, putting the testimony of the witnesses on the part of the State out of the case, as an intentional killing with a deadly weapon was admitted, the testimony of the prisoner's witnesses did not mitigate the offense to manslaughter; and the prisoner has no right to complain because the instruction assumes that what his own witnesses swore to was true.
The third objection is not tenable. The position "that the principle on which the doctrine of reasonable doubt is grounded is as much applicable to the grade of the homicide as it is to the fact of the homicide" is not true. The error consists in not attending to the distinction, that the fact of the homicide must be proved by the State; but if found, or admitted, theonus of showing justification, excuse, or mitigation is upon *Page 295 
the prisoner. At page 290 Foster says: "Whoever would shelter himself under the plea of provocation must prove his case to the satisfaction of the jury"; the presumption of law is against him "till the presumption is repelled by contrary evidence." At page 255 the matter is explained at large.
The principle on which the doctrine of reasonable doubt as to the fact of the homicide is grounded is that, in favor of life, the fact which theState is required to establish must be proved beyond a reasonable doubt. It certainly would not be in favor of life to apply this doctrine to matter of mitigation, which the prisoner is required to establish. Hence, in regard to that, the rule is, the jury must be satisfied by the testimony that the matter offered in mitigation is true.
There is no error. (463)
NOTE. — A judge must declare and explain to the jury the law arising on the evidence. S. v. Dunlop, 65 N.C. 288; Smith v. Smith,72 N.C. 159; S. v. Gaither, 72 N.C. 458; Hill v. Sprinkle,76 N.C. 353.
If two fight upon a sudden quarrel, and one kills the other, the chances being equal, this constitutes manslaughter. S. v. Massage, 65 N.C. 480.
If A. assaults B., giving him a severe blow, and B. strikes him with a deadly weapon and death ensues, it is manslaughter. If the provocation from A. is slight, and B. strikes, and it appear from the weapon used, or other circumstance, that B. intended to kill A. or do him bodily harm, and death ensues, it is murder. S. v. Smith, 77 N.C. 488.
Upon a trial for murder, the fact of killing with a deadly weapon being proved, it is incumbent upon the prisoner to establish matter of mitigation, neither beyond a reasonable doubt nor according to the preponderance of testimony, but to the satisfaction of the jury. S. v.Willis, 63 N.C. 26; S. v. Haywood, 61 N.C. 376. If the jury are left in doubt, it is murder. S. v. Smith, 77 N.C. 488.
Cited: S. v. Willis, 63 N.C. 27, 29; S. v. Smith, 77 N.C. 489; S. v.Payne, 86 N.C. 610; S. v. Brittain, 89 N.C. 502; S. v. Carland, 90 N.C. 675;S. v. Mazon, ib., 683, 684; S. v. Kennedy, 91 N.C. 577; S. v.Vines, 93 N.C. 498; S. v. Gooch, 94 N.C. 1002; S. v. Byers, 100 N.C. 518;Harding v. Long, 103 N.C. 5; S. v. Rollins, 113 N.C. 734; S. v.Barringer, 114 N.C. 841; S. v. Neal, 120 N.C. 621; S. v. Byrd, 121 N.C. 686;S. v. Barrett, 132 N.C. 1012; S. v. Lipscomb, 134 N.C. 695; S.v. Clark, ib., 702, 714; S. v. White, 138 N.C. 718; S. v. Quick,150 N.C. 824; S. v. Bradley, 161 N.C. 293; S. v. Pollard,168 N.C. 120; S. v. Kennedy, 169 N.C. 295. *Page 296